# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO
# Honorable Marcia S. Krieger

Civil Action No. 12-cv-03086-MSK

JULIE A. ALLEN,

    Plaintiff,

v.

CAROLYN W. COLVIN, Acting Commissioner, Social Security Administration,

    Defendant.[1]

## OPINION and ORDER

**THIS MATTER** comes before the Court on Plaintiff Julie A. Allen's appeal of the Commissioner of Social Security's final decision denying her application for Disability Insurance Benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-33. Having considered the pleadings and the record, the Court

**FINDS** and **CONCLUDES** that:

### I. Jurisdiction

This is the third time Ms. Allen has appealed to the District Court from the Commissioner's denial of disability benefits. Two prior denial decisions have been reversed and remanded for further proceedings. The most recent remand order expressly required the ALJ to include a limitation relating to pace in the claimant's RFC. *See* Judgment of March 23, 2011.

---

[1] At the time Ms. Allen filed her most recent appeal, Michael J. Astrue was the Commissioner of Social Security. Carolyn W. Colvin is substituted as the Defendant in this action to reflect her designation as Acting Commisioner of Social Security, effective February 14, 2013.

This was not done. Thus, the history of the Commissioner's decisions and the Court's remands bears on the determination in this appeal.

Ms. Allen initially filed a claim for disability insurance benefits pursuant to Title II on May 10, 2004, asserting that her disability began on August 20, 2003. After her claim was initially denied, Ms. Allen filed a written request for a hearing before an Administrative Law Judge ("ALJ"). A hearing was held on April 7, 2005, and the ALJ issued a decision which found that Ms. Sutherland met the insured status requirements through December 31, 2006. Applying the five-step disability evaluation process, the ALJ also found that: (1) Ms. Allen had not engaged in substantial gainful activity since August 20, 2003; (2) her affective disorder was a severe impairment; (3) she did not have an impairment or combination of impairments that met or medically equaled any of the impairments listed in 20 C.F.R. Part 404, Subpt. P, Appx. 1 ("the Listings"); and (4) Ms. Allen had the residual functional capacity ("RFC") to perform work, with no exertional limitations, that did not require complex tasks (SVP of 2 or less). Given this RFC, the ALJ found that, although Ms. Allen could not perform her past work, she was not disabled because she was capable of performing other jobs that existed in substantial numbers in the national economy, including escort driver, mail clerk (non-postal) and hand packer. The Appeals Council denied Ms. Allen's request for review of that Decision and she appealed to the District Court. The Commissioner was unable to locate the hearing transcript and therefore requested remand of the case. The Commissioner subsequently located the hearing transcript, the District Court nevertheless remanded Ms. Allen's claim to the Commissioner for a new hearing. *See* Order of September 11, 2007.

A second hearing was held before a different ALJ on March 6, 2008. The ALJ issued another Decision that denied Ms. Allen disability benefits. This ALJ found that: (1) Ms. Allen

had not engaged in substantial gainful activity since August 20, 2003; (2) she suffered from a bipolar disorder that was a severe impairment; (3) this impairment did not meet or medically equal an impairment in the Listings; and (4) Ms. Allen had the RFC to perform a full range of work at all exertional levels but with moderate limitations in her ability to: understand, remember and carry out detailed instructions; maintain attention and concentration for extended periods; interact appropriately with co-workers, supervisors or the general public; and complete a normal work day or work week without interruption from psychologically based symptoms. Based on this RFC, Ms. Allen was unable to perform her past jobs, but was not disabled because she could perform other jobs in the national economy, namely motel cleaner, bench assembler and paper inserter. The Appeals Council denied Ms. Allen's request for review. Ms. Allen appealed to the District Court a second time.

At a hearing held on March 22, 2011, this Court made oral findings and conclusions on the record, again reversing and remanding the matter. The remand order was expressly limited further proceedings to "correction of the RFC to include reference to Claimant's slow pace in following instructions in accordance with Dr. Ryan's opinion, and a new Step 5 determination based upon the corrected RFC." *See* Judgment of March 23, 2011.

Pursuant to this Court's remand order, a third hearing was held on June 27, 2012 before yet another ALJ. After the hearing, the ALJ issued a Decision with findings at Steps 1-3 identical to the second Decision, Rather than following the express directive in the Remand Order to, "include reference to Claimant's slow pace in following instructions in accordance with Dr. Ryan's opinion" the ALJ found Ms. Allen to have an RFC to perform a full range of work at all exertional levels, but was limited to simple, unskilled tasks, **involving a low stress environment and contact with supervisors, co-workers and the general public that was**

3

**neither frequent nor prolonged**.  This new finding was premised upon the ALJ's assessment of

Dr. Ryan's opinions.  The Decision stated:

> Pursuant to the remand order, the undersigned also considered Dr. Ryan's finding [that] the claimant can understand and follow instructions, and is accurate but slow…. The undersigned notes [that] Dr. Ryan derived this finding from those of an examining neuropsychologist, [Dr. Manguso].  Specifically, Dr. Manguso noted [that] the claimant [did] not show any specific impairment in attention, information processing speed, or visual spatial skills.  However, the claimant was functioning at a mildly reduced level of cognitive efficiency at the time of the evaluation, which was typical for individuals with emotional/psychological disturbance.  The claimant was *somewhat slow* to take in and remember new information, particularly detailed verbal information, and was accurate but *somewhat slow* when attempting to solve novel problems or complete cognitively challenging tasks requiring her to shift her mental set back and forth between two activities…. The undersigned notes [that] Dr. Manguso noted only [that] the claimant was "somewhat slow" when remembering or completing things that were more complex in nature.  Ostensibly, Dr. Ryan took this into account when reaching her conclusion [that] the claimant could perform work that did not require more than simple instructions, ordinary routines, and simple work decisions.  Because the District Court Judge has directed the undersigned to include a limitation relating to pace in the claimant's [RFC], the undersigned incorporates an additional limitation, restricting the claimant to a low stress environment.  This is based on Dr. Manguso's finding [that] the results of MMPI-2 testing show the claimant has difficulty with elevated stress…. In reaching this conclusion, the undersigned considered a series of questions the claimant's representative posed to the vocational expert.  The representative couched her questions on the premise that the claimant had a *very slow* pace, which would reduce the claimant's pace by either 50, 20, or even 10 percent, when the evidence does not support this.  As such, no weight is given to this line of questioning. (emphasis in original)

Based on this RFC, again Ms. Allen was found to be unable to perform her past jobs.  Again, she was found to be able to perform other jobs in the national economy, including escort vehicle driver, wholesale or retail marketer, and assembler.  Again the Appeals Council denied Ms. Allen's request for review, making this Decision the Commissioner's final decision for purposes of judicial review.  *Krauser v. Astrue*, 638 F.3d 1324, 1327 (10th Cir. 2011).  Ms. Allen's appeal

was timely brought, and this Court once again exercises jurisdiction to review the Commissioner of Social Security's final decision pursuant to 42 U.S.C. § 405(g).

## II.     Material Facts

The material facts are as follows.

Ms. Allen was born in 1963 and was 39 years old on her alleged onset of disability date and 43 years old when her insured status expired in December 2006.  She has a GED, two years of college education and worked as a manager at an electronics company and a plumbing company.  She suffers from bipolar disorder.

### A. Treatment

Ms. Allen was diagnosed with bipolar disorder by Dr. Gamblin in March 2004.  He prescribed her a mood stabilizing medication, Lamictal, and thereafter saw her periodically to monitor and prescribe her medication.  Ms. Allen's primary source of counseling was Mr. Zautke, L.C.S.W.  He first saw Ms. Allen in February 2004 and treated her regularly thereafter.  As part of her treatment for her bipolar disorder, Ms. Allen was prescribed not just Lamictal, but also Lithium, Topomax, Lovastatin and Ambien.  Other than counseling and medication, Ms. Allen did not receive other significant medical treatment.  However, numerous medical professionals examined her and/or offered opinions as to her functional limitations and her ability to work.

### B. Medical Opinions

Dr. Gamblin not only treated Ms. Allen, but also offered numerous opinions about her mental status and ability to work.  Many, including those from March, July, August, September and December 2004, October 2007 and January 2008, were simply statements that Ms. Allen was unable to work.  However, he also offered opinions as to her functional limitations as well as

her General Assessment of Functioning ("GAF").[2] In June 2004 he stated that he thought Ms. Allen was unable to run her plumbing business, but did not know if she could do other work. That same month he gave her a GAF of 65 and stated that her GAF had been as high as 72 in the past year. In July, September and December 2004 he assigned her a GAF of 65. In March 2005, Dr. Gamblin completed a mental RFC questionnaire in which he assigned her a GAF of 59 and concluded that Ms. Allen had serious limitations in her ability to make simple work decisions, perform at a consistent pace and respond appropriately to changes in routine work setting. He also concluded that she was unable to maintain regular attendance at work, maintain a routine, work with others or deal with work stress. Finally, he concluded that she would be unable to complete a normal workday or workweek. In July 2005, Dr. Gamblin stated that "if returning to employment causes loss of current financial disability benefits, return to employment may be impossible. In my opinion it is unlikely that Ms. Allen can find employment that will replace the income she is currently receiving as a result of her disability insurance policy." In December 2005, Dr. Gamblin concluded that Ms. Allen's bipolar disorder met the requirements of Listing 12.04 – Affective Disorders. Finally, Dr. Gamblin testified at the March 2008 hearing. He stated that Ms. Allen was depressed at least half the time and was unable to function well even on good days. He also testified that the GAF scores he had assigned to Ms. Allen did not accurately reflect the extent of her impairment and should have been lower.

Based on his treatment of Ms. Allen, Mr. Zautke also offered an opinion as to her functional limitations. He concluded in March 2004 that she was unable to work due to severe depression.

---

[2] A GAF score is used to subjectively rate the social, occupational and psychological functioning of adults on a scale of 1-100. Am. Psychiatric Ass'n, *Diagnostic and Statistical Manual of Mental Disorders* 32 (4th ed. Text Revision 2000).

Other physicians and psychologists also examined Ms. Allen and set forth their conclusions as to her functional limitations and ability to work. In September 2004, Dr. Jones examined Ms. Allen. She told him that her memory and concentration were poor but that she was able to watch an entire television show without distraction. She also stated that she was able to perform all her household chores and care for her three children, but that she preferred to let other do these tasks. Dr. Jones found that she had a normal mood and affect as well as adequate concentration and memory. He wrote that her depressive symptoms were under control with treatment and ranged from very mild to moderate. Ultimately, he diagnosed her with bipolar disorder and personality disorder and assigned her a GAF of 65.

Ms. Allen was examined by Dr. Bermudez, a neuropsychologist, in May 2005. She complained of anxiety, depression and claustrophobia. Dr. Bermudez concluded that she was functioning at a high level of cognitive efficiency. He also concluded that her drive and work motivation was low and that her examination results showed a low level of motivation with regard to treatment.

One month later, Dr. Diamond examined Ms. Allen. He stated that he spoke to Dr. Gamblin, who told him that Ms. Allen cold not return to her old job but might be able to perform other work. Based on his examination, Dr. Diamond concluded that she had a GAF of 58, no impairment in her memory, but moderate impairment in activities of daily living, social functioning, concentration, persistence, pace and adaptation. He stated that she was able to perform full-time employment but that she was not motivated to look for work because she was receiving private disability benefits. However, if motivated he felt she had a good chance of returning to work.

Dr. Manguso evaluated Ms. Allen and produced a neuropsychological report in June 2006. She found that:

> [Ms. Allen's] memory functions are average to low average. She does not show any specific impairment in attention, information processing speed, visual spatial skills, language functions, or executive functions that would suggest organic cerebral impairment. However, she is functioning at a mildly reduced level of cognitive efficiency at this time that is typical of individuals with emotional/psychological disturbance. She is somewhat slow to take in and remember new information (particularly detailed verbal information). When attempting to solve novel problems or complete cognitively challenging tasks requiring her to shift her mental set back and forth between two activities, she is accurate but somewhat slow.

Dr. Olin evaluated Ms. Allen in July 2006 and concluded that she did not exhibit significant memory or concentration deficiencies. He assigned her a GAF score of 58 and found that she was moderately impaired in activities of daily living and her ability to maintain concentration, persistence and pace. Dr. Olin also wrote in his report that her receipt of private disability payments was a major barrier to her returning to work.

Dr. Ryan, a state agency psychiatrist, reviewed Ms. Allen's medical records. Dr. Ryan found that Ms. Allen had mild restriction of activities of daily living, moderate difficulties in maintaining social functioning, concentration, persistence or pace, and no episodes of decompensation. Her mental RFC assessmentwas that:

> [Ms. Allen] understands, can follow instructions, accurate but slow. She retains the ability to engage in work that does not require more than simple instructions, ordinary routines, & simple work decisions. She should work in an environment where she is not required to serve the general public, supervisors and coworkers OK if not frequent or prolonged.

**C.  Ms. Allen's Testimony**

Ms. Allen testified at all three of her administrative hearings. In summary, she stated that she was unable to work due to depression, poor concentration and memory problems. Three or four days per week she was very depressed and stayed in her bedroom. This depression made

8

routine household and personal care difficult. Occasionally, she went out to eat and watched movies at home, but she had trouble concentrating. She did not go shopping due to claustrophobia and the number of people around. She rarely left home alone and did so only to go to medical appointments or to pick up her child from school.

### D.  June 2012 Hearing

Ms. Allen's attorney questioned the vocational expert at the hearing based upon the additional limitation this Court ordered included in the RFC, namely Ms. Allen's slow pace in following instructions:

> Q: If the individual's ability to perform tasks was at a very slow pace, how would that impact these jobs?
> A: Can you describe vocationally relevant slow pace?  Would it be slowing things down by a percentage or anything like that?
> Q: Let's say – I am assuming that if the pace was 50 percent slower, that would eliminate jobs.
> A: That's right.
> Q: If it were 20 percent lower, what would that do to the jobs?
> A: It would eliminate jobs.
> Q: And, so if it were 10 percent lower?
> A: That's borderline.
> Q: Okay.  And, if the limitation on working with the general public was no work with the general public, what would that do with these jobs?
> A: Nothing.

### III.    Issues Presented

Ms. Allen raises four challenges to the Commissioner's Decision: (1) the ALJ's RFC assessment is inconsistent with his adoption of Dr. Ryan's opinions and contrary to the Remand Order; (2) the ALJ improperly gave great weight to Dr. Ryan's opinions because they were unsigned; (3) the ALJ improperly rejected her treating physician's opinions; and (4) substantial

evidence does not support the ALJ's adverse credibility finding. In light of the limited scope of the Court's March 2011 remand, the Court need only consider Ms. Allen's first challenge.[3]

## IV.     Standard of Review

Judicial review of the Commissioner of Social Security's determination that a claimant is not disabled within the meaning of the Social Security Act is limited to determining whether the Commissioner applied the correct legal standard and whether the decision is supported by substantial evidence. *Watkins v. Barnhart*, 350 F.3d 1297, 1299 (10th Cir. 2003); 42 U.S.C. § 405(g). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. It requires more than a scintilla, but less than a preponderance. *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007). On appeal, a reviewing court's job is neither to "reweigh the evidence nor substitute our judgment for that of the agency." *Branum v. Barnhart*, 385 f.3d 1268, 1270, 105 Fed. Appx. 990 (10th Cir 2004) (*quoting Casias v. Sec'y of Health & Human Servs.*, 933 F.2d 799, 800 (10th Cir. 1991)).

The ALJ cannot substitute a personal medical judgment for that of a physician or psychologist. *Winfrey v. Chater*, 92 F.3d 1017, 1022 (10th Cir. 1996) (*citing Kemp v. Bowen*, 816 F.2d 1469, 1476 (10th Cir. 1987) (ALJ cannot interpose his own medical expertise over that of a physician)).

The question of whether or not to award benefits is within this Court's discretion. *Ragland v. Shalala*, 992 F.2d 1056, 1060 (10th Cir. 1993). In determining whether an award of benefits is appropriate, "outright reversal and remand for immediate award of benefits is appropriate when additional fact finding would serve no useful purpose." *Sorenson v. Bowen*,

---

[3] In the Court's March 2011 oral ruling, arguments identical to Ms. Allen's second, third and fourth challenges were considered and rejected. As noted above, the Court remanded Ms. Allen's claim solely for "correction of the RFC to include reference to Claimant's slow pace in following instructions in accordance with Dr. Ryan's opinion, and a new Step 5 determination based upon the corrected RFC." *See* Judgment of March 23, 2011.

888 F.2d 706, 713 (10th Cir. 1989) (citations omitted). Reversal and remand for immediate award of benefits is appropriate when "the record fully supports a determination that Plaintiff is disabled as a matter of law and is entitled to the benefits for which he applied." *Id.* at 713. Ultimately, "[t]he [Commissioner] is not entitled to adjudicate a case '*ad infinitum* until it correctly applies the proper legal standard and gathers evidence to support its conclusion.'" *Sisco v. U.S. Dept. of Health and Human Svcs.*, 10 F.3d 739, 745 (10th Cir. 1993) (citing *Thaete v. Shalala*, 826 F.Supp. 1250, 1252 (D.Colo. 1993)).

## V.     Discussion

Ms. Allen contests the adequacy of the RFC finding in the latest Decision, in particular the substitution of Dr. Ryan's findings with regard to pace (as directed on the prior remand) with findings that Ms. Allen was limited to "simple, unskilled tasks, involving a low stress environment and contact with supervisors, co-workers and the general public that was neither frequent nor prolonged."[4] Ms. Allen argues that this RFC conflicted with both this Court's remand instructions and Dr. Ryan's opinion. The Court agrees.

In March 2011, the Court reversed and remanded the Commissioner's Decision solely "for correction of the RFC to include reference to [Ms. Allen's] slow pace in following instructions in accordance with Dr. Ryan's opinion, and a new Step 5 determination based upon the corrected RFC." The rationale for this remand was twofold: First, the ALJ purported to adopt Dr. Ryan's opinion, but then did not incorporate all those limitations outlined in Dr. Ryan's opinion. Second, a "slow pace in following instructions" could significantly impact the type of work Ms. Allen was able to perform.

---

[4] Ms. Allen also argues that the RFC failed to include an additional limitation prohibiting all public contact. Even if the ALJ erred in failing to include this limitation, any error was harmless. The vocational expert testified at the June 2012 hearing that a limitation on all public contact would not affect Ms. Allen's ability to perform those jobs the vocational expert listed.

Despite this Court's instructions, the ALJ did not include Dr. Ryan's complete opinion in the new RFC finding or present it to a vocational expert.  Instead, the ALJ reached behind Dr. Ryan's opinion (which had been adopted in the prior Decision), and essentially rejected restrictions as to pace based on other medical records.  Thus, the ALJ changed the limitation as to pace of work, to a limitation with regard to conditions in the working environment – the new limitation was to "a low stress environment."

Putting aside the Claimaint's indignation at the failure of the ALJ to follow the remand order, the question is whether the new limitation reflects the limits contained in Dr. Ryan's opinion.  The Court concludes that it does not.

A limitation to work in "a low stress environment" is not the same as a limitation with regard to a "slow pace in following instructions".  The former pertains to the working environment and the latter relates to the speed at which the tasks are performed.  Although the Court appreciates the ALJ's effort in trying to understand what Dr. Ryan meant based on medical records that Dr. Ryan reviewed.  However, such interpretation injected the ALJ's lay opinion into the RFC and effectively perpetuated the problem with the prior Decision – purported adoption of Dr. Ryan's opinions without including all of them in the RFC.

The second Decision was reversed and remanded because the ALJ purported adopted Dr. Ryan's RFC opinion but inexplicably left out the "slow pace in following instructions" limitation.  *See* March 22, 2011 Hearing Transcript at 30-31.  Rather than simply adopting the entirety of Dr. Ryan's opinion as instructed, however, the ALJ looked behind Dr. Ryan's opinion and made an independent assessment about Ms. Allen's limitations based on other medical reports.  Essentially, the ALJ substituted the portion of Dr. Ryan's opinion that had been omitted in the earlier Decision with the ALJ's personal opinion.  This was impermissible. *Winfrey v.*

*Chater*, 92 F.3d at 1022 (the ALJ cannot substitute a personal medical judgment for that of a physician).

The error is not harmless. As is evident in the testimony of the vocational expert, pace limitations affect Ms. Allen's ability to perform the three jobs the vocational expert - escort vehicle driver, retail marker and assembler. *See* Hearing Transcript of March 22, 2011 at 31. When Ms. Allen's attorney asked the vocational expert about the impact of a "slow pace" limitation on her ability to perform these jobs, the vocational expert testified that a 50% and 20% reduction in pace would prevent Ms. Allen from performing these jobs, and even a 10% reduction would be "borderline." *See* Administrative Hearing Transcript of June 27, 2012 at 24.

In light of the ALJ's error, the Court **REVERSES** the Commissioner's Decision to deny benefits. In light of the testimony of the vocational expert that reduction in pace, even at 10%, would impair Ms. Allen's ability to perform the jobs specified, the Court **REMANDS** the matter for an immediate award of benefits. Upon application made within 14 days, Ms. Allen shall be entitled to an award of reasonable attorney fees pursuant to the EAJA The Clerk shall enter a Judgment in accordance herewith.

DATED this 18th day of December, 2013.

                                        **BY THE COURT:**

                                        Marcia S. Krieger
                                        United States District Judge